### DORMAN v SEMPLE et

Ohio Appeals, 1st Dist, Hamilton Co

No 5434. Decided June 27, 1938

Nichols, Morrill, Wood, Marx & Ginter, Cincinnati, for appellant.

August A. Rendigs, and Wm H. Fry, Cincinnati, for appellees.

### OPINION

By ROSS, PJ.

The defendants were the owners of a large building at the corner of Eighth and Sycamore Streets in the city of Cincinnati. The several floors of the building were rented or leased to various tenants. The ninth floor was leased to the Superior Tailoring Company. By the terms of the lease, the owners retained control of the outside of the building.

The plaintiff was injured by a pane of glass which fell from a window on the ninth floor.

At the time plaintiff was injured he in company with an employee of The Dorman Automotive Parts Company was walking on the sidewalk adjacent to the premises. He was unaware of any danger until struck by the pane of glass which was almost intact.

The accident occurred at 6:30 P. M., July 2nd, 1935. Firemen stationed one block south of the defendant's building heard a crash and saw the glass float out from the building and then suddenly dip and strike the plaintiff. They made an examination of the premises and found that the ropes of windows on the side of the building near which the plaintiff was injured were stretched and broken.

The tenant was not permitted to testify that he had complained to the owners of the building about the condition of the building.

The court instructed a verdict for the defendants at the close of the plaintiff's evidence. In this, the Court committed error. There was sufficient evidence to justify the submission of the case to the jury, especially as the doctrine of res ipsa loquitur ap-

plies. **Goodall v Deters, 121 Oh St 432, 436.** See also opinion in Reliance Insurance Company v Pohlking, No 5490, of even date herewith.

Judgment reversed and cause remanded for new trial.

HAMILTON, J, concurs.
MATTHEWS, J. dissents.

MATTHEWS, J, (dissenting):

As stated by the court, this action is by a pedestrian upon a public sidewalk against the owners of an adjacent building for damages on account of personal injuries received as a result of a pane of glass falling from the ninth story of the building and striking him as he was passing along the sidewalk in front of the building.

The allegation of negligence in the petition is:

"Plaintiff further says that the defendants disregarding their duties, negligently and carelessly allowed and permitted the window ropes and equipment supporting said window, located on the ninth floor of the Power Building, to become weak and defective and unable to support said window and likely to give, snap, break and thereby cause said window to fall without warning and as a menace and danger to persons lawfully upon the streets, sidewalks and highways in the vicinity of said building."

As a part of the plaintiff's case, there was introduced a written lease of the ninth floor of this building, in which the lessors reserved certain control over the leased premises, such as the right to enter at all reasonable times to inspect the premises and to make "such repairs, alterations, additions or improvements therein as may be necessary for the safety and preservation thereof, or which lessors may deem advisable." The tenant agreed not to make any alterations, additions, or improvements in the premises without the written consent of the defendants.

Notwithstanding these provisions of the lease, the tenants required the right to the possession of the leased premises. That was the consideration for the payment of the rent and the lessors covenanted that the lessee paying the rent should "lawfully, peaceably, and quietly hold, occupy and enjoy said premises."

The arguments at the bar and in the briefs were devoted to a discussion of the cases relating to the liability of the owner of premises for injuries to users of the adjacent public street.

The plaintiff contended that the terms of the lease in this instance are such that the defendants never divested themselves of the control of the premises and the resulting liability that attached to them upon the acquisition of the premises, citing Appel v Muller, 262 N. Y. 278, 186 N. E. 785; **Penndergast v Ginsberg, 119 Oh St 360, 164 N E. 345;** Wilchick v Marks & Silverstone (1934) 2 Kings Bench, 56, and other cases.

Assuming that such is the law and that there rested upon the defendants the duty of care toward users of the adjacent public street, still liability can result only from an injury having a direct causal relation to a violation of that duty, and it is that element of the case, which I think is missing from the evidence in this case. I quote all the evidence in the record relating to the fall of this glass. Mr. Comello, an officer of the corporation tenant, said:

"Q. Mr. Comello, do you recall the time when Mr. Dorman was injured?

A. I remember that I was on the floor when I heard the crash of glass and I walked up to my man there and asked what happened and he said————

Mr. Rendigs: Object to conversation.

Q. You may not tell what the man said————

A. I heard the glass fall.

Q. Which way did it fall?

A. I couldn't say because I was about middle of the floor, which I guess is 50 to 75 feet away from there.

Q. Which floor was that?

A. Ninth floor.

Q. After you heard the crash you say you went over and looked at the place?

A. After I heard the crash I walked up toward where the noise was and I saw my man had his hand cut and asked him what happened.

Q. What did you find there?

A. I found that the glass ———— lot of glass inside.

Q. Was there a pane or two missing?

A. Panes missing and some of the glass hanging there about ready to fall.

Q. The panes were shattered?

A. Shattered, yes.
* * *

Q. Did you examine the window, Mr. Comello, the condition of it?

A. What do you mean, before the accident or after?

Q. Before and after?

A. No I didn't examine that window in

particular, that one winodw you are talking about, and didn't examine any particular one.

Q. You didn't?

A. Not exactly that one; I couldn't say that one."

It will be observed that Comello did not see the glass fall. His attention was attracted by the noise of falling glass. Nothing that he said indicates in the slightest what caused the glass to fall. In a profert that was not responsive to the question to the witness, it is recited that "This wasn't the first time windows had come down," but it is clear that this witness did not know that this particular window sash on this occasion had fallen. He had not testified that he had seen the sash up immediately before, and that it was down immediately after, and he had testified that he knew nothing about the equipment for holding this window sash up. It is clear that he knew nothing about why the glass fell.

The only other witness who testified on the subject was George Scheele. He was on the street about 150 feet away when his attention was attracted by the falling of the glass. He went to the ninth floor immediately thereafter. He testified that:

"Q. Did you have occasion to examine the window ropes that were there?

A. Yes.

Q. Will you tell the condition of the window ropes to the jury?

Mr. Rendigs: Objection.

The Court: Overruled.

Q. Answer the question.

A. Well, the ropes were broken, well worn and stretched.

Q. You say the rope well worn?

A. Well worn and stretched out, yes.

* * *

A. And I heard the crash and then the glass come down and these two men coming up the street looked up and they flattened themselves against the wall.

Q. Did the crash sound like somebody had pulled down a window?

A. That's something I can't say."

This witness did not say whether the sash was up or down. While he said the ropes were broken, well worn and stretched, he does not say that they were entirely severed, so as to release the sash from the counterbalancing weight. His testimony sheds no light upon what caused the glass to fall.

This evidence shows defects in the building, but fails to show any causal relation between these defects and the falling glass.

As the ninth floor was occupied by a tenant and at least two persons employed by the tenant were on the floor at the time and one of them near the window, the mere falling of the glass would raise no inference of negligence against the defendants. It is not a case for the application of the principle of res ipsa loquitur. In **29 O. Jur. §157,** at p 639, the rule is stated that:

"If, from the nature of the event causing the injury, an inquiry naturally arises as to which of one of two or more persons acting independently is responsible, or if it appear that the injury was proximately caused by the independent acts of two or more persons, the application of the maxim is excluded, by its terms."

A case bearing a rather striking resemblance to this case is **Cleveland Ry. v Sutherland, 115 Oh St 262.** The plaintiff, while waiting in a safety zone, was injured by glass falling from a street car. The court at page 265 said:

"The mere fact that the company was in control of the operation of the car, with a motorman in front and a conductor in the rear, does not warrant the inference or presumption that the breaking of the window at the center of a car, in the manner in which the glass here in question was broken, resulted from the negligence of the company, thus placing upon the company the burden of overcoming such presumption."

In support of its conclusion in this case that it involves the application of the principle of res ipsa loquitur the court cite two cases. The first is that of **Goodall v Deters, 121 Oh St 432.** That action was one by a tenant against a landlord for personal injuries, caused by the condition of the premises in the exclusive control of the tenant. The court held that res ipsa loquitur had no application. It is hard to see how that case supports the conclusion that res ipsa loquitur applies in this case.

The other case is that of Reliance Insurance Co. v Pohlking, just decided by this court. The plaintiff in that case recovered a judgment for damages caused by fire occasioned through the defendant's negligence. We affirmed the judgment because we found in the record circumstantial evidence of negligence on the part of the plaintiff causing the fire. The case was not decided on any application of the principle of res ipsa loquitur. The only resemblance

between that case and this is that the only evidence introduced in each was circumstantial. A finding that the evidence in one case was sufficient to support a judgment furnishes no guide for determining whether there is any evidence to support all the necessary elements for recovery in the other case.

I think the judgment should be affirmed.

For these reasons, I dissent from the judgment of reversal.